docket 17-4131. Please proceed when you're ready. May it please the court, my name is James Edward Jones. I'm the attorney for the appellant Vion Martinez. I'd request to reserve five minutes of rebuttal time. And as the court is aware, the only issue in this case is whether or not Trooper Phillips had reasonable suspicion of criminal activity to stop my client's vehicle as it drove through the highways of Arizona. Now, the Fourth Amendment provides that we are to be protected from unreasonable searches and seizures. And this court in the U.S. Supreme Court has said that an officer, if he has a reasonable suspicion of criminal activity, he may then engage one of these seizures. Now, typically in the motor vehicle context, that comes with a traffic violation, whether it's failure to signal a sufficient period of time or changing lanes without signaling. Any one of those criminal activities can give an officer an opportunity to stop a vehicle. And here we had 78 and a 75. I realize the police department or the sheriff or the trooper, the policy was we're not going to give tickets for 78 and a 75, but it's still a legal violation, isn't it? The 78 and the 75 would be an illegal violation. The trooper at the hearing testified that he felt that they were going the speed limit. He did not pull him over based on 78 and a 75, but it was his opinion that they were within the speed limit. That wasn't the reason for the stop. Well, where did the 78 miles an hour come from then? I believe that may have been his estimate, that they were going between 75 and 78, but he made it clear that that was not the purpose for the stop. In fact, as you look at the totality of the circumstances, the trooper didn't even consider the 78 miles an hour. He said that they were going the speed limit. That was made clear in the hearing that he felt they were going the speed limit. What he did consider and what caused his suspicion to pull them over was that there was a bank robbery in Winslow, Arizona. In the investigation of that bank robbery, there was no description of the bank robber, no description of a getaway car, no leads to go off of except for two strange incidents. Somewhere in Winslow, Arizona near the bank, somebody saw a couple of individuals running, one with a checkered shirt, one with a Bud Light hat. About a half an hour earlier in Flagstaff, Arizona, somebody saw an individual somewhere near a bank in Flagstaff, Arizona with a Bud Light hat and a checkered shirt. It wasn't just a bank. It was the same institution, Wells Fargo, right? It was a bank. Wasn't it the same brand? Wasn't it Wells Fargo-like in Winslow as well? It could have been. I believe so. But the fact is that in both instances, there's no reporting of these individuals with the Bud Light hats committing a crime, just doing something unusual, not criminal. Oh, so the Winslow, Arizona, what came across on the scanner or whatever was not that these two were the suspects? The description was not of suspects? That's correct. They were individuals that were near the bank, suspicious individuals. The transcript you'll see and the officer's testimony was that they were not seen running from the bank, but they were in the vicinity of the bank in an alley near the bank. They saw two individuals running. The strange activity in Flagstaff is not described at all, other than just being unusual activity. Well, it was enough that someone reported it, and that tied to the White Cadillac, didn't it? In the Flagstaff incident that was 75 miles away from the Winslow incident, somebody said that they saw unusual activity and that the person involved in that activity that went undescribed was in a White Cadillac. But the officer made it clear the White Cadillac was not seen, engaged in, or part of criminal activity, just unusual or suspicious activity. And the standard isn't an officer can pull someone over if he has a reasonable suspicion of suspicious activity. That would be akin to the hunch that the cases talk about. But instead it requires a reasonable suspicion of criminal activity. And in both cases, both in Winslow and in Flagstaff, the individuals seen were engaged in suspicious or unusual activity not directly linked to criminal activity. There was no White Cadillac waiting outside the bank in Winslow that sped off, and then they found a car that looked similar when Trooper Phillips was driving. Am I correct that in the suspicious activity, or I forget how it was termed in Flagstaff,  was that person also was a Native American male wearing a checkered hoodie and a Bud Light hat and driving a White Cadillac, right? Driving a White Cadillac. And that person was driving. It was a single individual driving, wearing a Bud Light hat and wearing a checkered shirt. Checkered shirt. Not two individuals running, no White Cadillac in sight. Correct.  Wearing a hat. And the other wearing a checkered shirt. Checkered shirt. Yeah. But once again, not linked directly to criminal activity. Okay. I just want to make sure that was the – it all sort of got jumbled together at the district court level. We kept talking about the checkered shirt and the hat, and ultimately your defendant, of course, wasn't the driver of the vehicle and had neither a checkered shirt or a hat. The driver of the vehicle was a woman. That's correct. Who wasn't Native American. And he wasn't Native American. And neither was she. And the woman driving the vehicle was not Native American. And as you look at the totality of the – She was wearing glasses. What's that? She was wearing glasses. She was wearing glasses. Not sunglasses, but glasses. And there's a photo of that in the evidence. Also, it's significant as you look at the totality of the circumstances that Flagstaff is about 75 miles out of Winslow, that the Winslow crime occurred before 1140 in the morning. It was reported, and the Bolton went out at about 1140. The individuals leaving the white Cadillac from Flagstaff were leaving at 11 o'clock. It takes an hour by testimony to get from Flagstaff to Winslow, which means it's 75 miles because the speed limit is constant, 75 miles between Flagstaff and Winslow, which means that those individuals would have had to have been driving a suspicious-looking rare white Cadillac between Flagstaff and Winslow at about 150 miles an hour for about a half an hour in order to be the same individuals. Not that it's dispositive of anything, but just to answer this curiosity that I've had reading the briefs and what I've read. The defendant in this case, is he tied to the Arizona bank robbery? Of course, he's charged with the Utah bank robbery days before that. Were they wrong that this white Cadillac had been involved in an Arizona bank robbery? I know the court's probably curious. They pulled him over because of the suspicion of the suspicious activity. The car smelled of marijuana, which led to further investigation. They found marijuana. They found evidence in Disha that links back to the Utah bank robbery. They were charged with the drug crime, but they were also charged with a theft related to the Winslow bank robbery. Not that the deputy or the trooper would have known that later, but other evidence eventually came in that linked them to that. It's not relevant to the officer's state of mind. To the Winslow bank robbery. The Winslow bank robbery, other evidence came in, bank video cameras came in. There eventually was a description of the bank robber. At this stage, Trooper Phillips did not have a description of the bank robber. There was no description of the bank robber or a car or anything else. All they had was a description of suspicious activity outside of both banks, frankly, that weren't directly linked to the bank robbery at the time. And the suspicious behavior was never identified in particularity. The suspicious behavior in Flagstaff was never described, at least to Trooper Phillips, which is, I mean, it's in the police reports and things. But Winslow was simply just running. Winslow was running. And as the Eagles would say, you can stand on a corner in Winslow, Arizona and be fine. But if you're running in a valley in Winslow, Arizona, you're engaged in suspicious activity. But my argument is that that activity in both places did not rise to criminal activity as far as having the nexus to provide reasonable suspicion of criminal activity such that they could stop that car. Even if the car was unusual, even if they had a reasonable suspicion of suspicious activity and that they might be related, Winslow and Flagstaff. It just was not enough. This white Cadillac suspicious activity was only identified as suspicious activity in neither Winslow nor Flagstaff. Was there any statement more particular that it was suspicious activity pertaining to the bank or looking like it was going to be a bank robbery participant or anything like that? Nothing specific. All they had was that this suspicious activity happened near each bank. But they don't identify in any greater detail what suspicious activity was. Except for the running in Winslow, no specifics in Flagstaff. If the Court has any other questions, I can ask them. Otherwise, I'd reserve my time for a moment. Is there any weight that should be given? I mean, there's other problems in the case, but putting them aside for a minute, is there any weight that should be given to the stop that this white Cadillac is very unusual in this part of the country? Well, if driving in a Cadillac, a white Cadillac, that is unusual translates into suspicious activity and the standard is reasonable suspicion of suspicious activity, then yes, they could stop that. But since the Cadillac, by the officer's testimony, the trooper's testimony, was that there was no link of the Cadillac to any criminal activity, then my argument would be no. Even if the Cadillac's unusual, the fact that it's unusual doesn't link it to criminal activity. But he wasn't using unusual to say that that by itself is criminal. It's criminal to drive an unusual car. He wasn't saying that. Right. He was saying that that was an assistance to me in saying this probably was the same car that showed up in Winslow and Flagstaff. Well, see, that's the thing. The car didn't show up in Winslow. He had a reasonable suspicion that the car that he saw was the one that was unusually linked to Flagstaff, the non-criminal activity in Flagstaff. And he was probably right, that the car involved in the unusual activity in Flagstaff was the car that he pulled over. But there was no link or an insufficient link to criminal activity of any sort, both in Flagstaff or Winslow. The car was never seen in Winslow. The car was only seen in Flagstaff? It was only seen in Flagstaff near a bank in Flagstaff. There was no car seen in Winslow at all. You're saying, I mean, he had to connect a lot of dots. He had to assume that the suspicious activity in Flagstaff was the same vehicle that later was in Winslow. And even though there was no connection, and then you make an inference there, you're saying it essentially was a hunch. I'm saying it was a hunch. There's some inferences to be made. But not enough dots were connected to say that criminal activity was there. He could have followed the car, seen the traffic violation, and then pulled it over. But the reason he pulled the car over was based on suspicious activity, not a direct link to criminal activity, and it was just insufficient. Well, it's a crime to conspire to rob a bank, isn't it? It would be. All right. Well, Flagstaff, somebody called in, and that doesn't happen every day. Something led someone to believe that these people were involved in robbing, intending to rob a bank. And we have no information about what the suspicious activity was other than it was near a bank in Flagstaff, but nothing to show that there was any criminal activity in Flagstaff. There's no evidence that there was a conspiracy to rob a bank, just that there was proximity to a bank in both locations with suspicious activity. Do we have anything to suggest that it was an officer in Flagstaff that thought this was suspicious activity, or is this simply the characterization given by some unknown observer? You know, the dispatch didn't say. They just said, hey, we've got some information that there was suspicious activity in Flagstaff. So it's not even that an officer thought it was suspicious. It's an unknown, unidentified person. Right. So we I mean, this isn't a vertical collective knowledge doctrine where we have an officer saying, I saw a person casing out a bank. There's just very general information going over the radio waves to this officer saying, hey, we saw this too, and we saw this too, and be on the lookout for this, without really connecting the dots to any criminal activity, just suspicious activity. Was there something, and I'm not finding it now, but was there something about a plate mentioned somewhere, a license plate? I saw it. I saw the word plate. I want to say it was in one of the reports of activity, but then there was nothing else. Yes. They got a plate on the white Cadillac in Flagstaff. They got the license plate. And. The officer, Trooper Phillips, testified that he called in the plate that he saw in the Cadillac, that he was behind to see if it was the same one. But the response did not come back before he pulled them over and did the stop. OK. To ask your suspicion, yes, it ended up being the same plate, but he didn't know that at the time of the stop. Unless there's more. Would your argument be the same if he had known that? It would be the same because it's still the fact that it's the car from Flagstaff doesn't link it to the bank in Winslow. OK. All right. Thank you. Good morning, Your Honors. The court. My name is Felice John V. Appearing on behalf of the United States. When Trooper Phillips stopped a rarely seen white Cadillac that was traveling east a little after twelve twenty seven p.m. at about milepost three twenty five on I-40 in Arizona, he possessed the following information based on two dispatches he had received. The first one was the eleven forty one a.m. dispatch. The second was the twelve thirteen p.m. dispatch. From the eleven forty one a.m. dispatch, he knew that at approximately sometime a little before eleven forty one, a bank in Winslow had been robbed. One subject of the robbery was described as a male wearing a fairly unique bud light hat. Another possible male subject was seen, was described as wearing a blue and white checkered shirt and blue jeans and was seen running east from the bank in an alley. Now, from the twelve thirteen p.m. dispatch, Trooper Phillips received what he testified was additional updated information about the bank robbery suspects. Now, this information came from Sergeant Swante, who was at the scene of the Flagstaff bank robbery. Trooper Phillips knew that. At a Flagstaff bank robbery? I'm sorry. I'm sorry, Your Honor. The Winslow bank robbery. The Winslow bank robbery. From this information, Trooper Phillips knew that a white Cadillac was seen leaving Flagstaff traveling eastbound. That's in the direction of Winslow after it was involved earlier that morning in suspicious activity near a Wells Fargo bank. A Native American. But we don't know who reported, called in that suspicious activity. No, there's nothing in the record to that, Your Honor. A Native American male wearing a light blue checkered hoodie. There's that checkered again. There's that color blue. And a bud light cap. Single person, not two different people. One wearing a hat and one wearing a checkered shirt. Yes. In one, it was one person wearing both the hoodie and the cap. The other, there were two people wearing the different things. But it still involved those unique descriptors. A hat? A bud light cap or hat. And a blue. In one, it was a hat. In one, it was a bud light hat. In one, it was two men. One wearing a bud light hat. One wearing a checkered shirt. In the other one, it was one man wearing a hat, a bud light hat, and a checkered shirt. Yes. And in one, there was a white Cadillac. Yes. That's with a single person. And in the other, there was no car. They were running. That's correct. That's correct. What about Mr. Jones' point that the Flagstaff suspicious activity is reported to occur. The trooper understands that occurred at 11 o'clock. The bank robbery is called in at 1141 and there's 75 miles between those two communities. Therefore, just doing the math in my head, assuming that it took them a while to get out of the bank, get the money, run down the alley, they would have been driving 150 miles an hour between those two communities. Does that undermine the reasonable suspicion? And why shouldn't it? I don't think so, Your Honor. Four reasons, I think. I think the first one is that these times and distances are approximates. In fact, there's nothing in the record about the true distance between Flagstaff and Winslow, but it is not 75 miles an hour. I'm sorry. It is not 75 miles. The second is one would expect or it's reasonable to infer that an individual who can stop you on that first point. Can we can we on our own take notice of a Google map or something that suggests it was 60 miles? Or is that improper evidence for the appellate court to consider? It wasn't in the record. The true distance between the two. But is that an objective fact that a court could consider or is that beyond our bounds? I would love to say it's not beyond the court's bounds because it is 58 miles between Flagstaff and Winslow. But I don't think we need to get... But the record said 75 miles? That was an estimate? Where did the 75 miles come from? And that's another. There was never anything clear in the record that the speed limit between Flagstaff and Winslow is 75 miles an hour, although... No, I'm not talking about the miles per hour, but where did the evidence come in that it was like 75 miles between Flagstaff and Winslow? It's extrapolating from the trooper's testimony that it takes... that at the speed limit, which is 75 miles an hour, although it wasn't in the record, it takes an hour to get there. So it's an estimate, Your Honor. And that's part of my argument as to why, while at first blush it's troubling a little bit, it doesn't really affect the reasonable suspicion in this case because it's certainly not impossible. One need not travel at some sort of Star Trekian warp speed to get from Flagstaff to Winslow. Number two, it's reasonable to infer that someone who is involved in suspicious activity, and there was a call about it, might have wanted to get as quickly out of Winslow to Flagstaff as possible. Can you stop there? Because that word infer here, to me, seems to be what this case is all about. Inference upon inference upon inference. Turned out to be a lot of really good inferences and a really good hunch, it seems like, but a good hunch isn't good enough. And there's lots of inferences. One, as you just said, is about the time that based on when the Flagstaff suspicious activity occurred, based on when the Winslow robbery may have occurred, yes, you know, an hour later he might be where this officer was. There's lots of inferences there. This isn't like a typical getaway car case where you spot the white Cadillac that is, you know, connected with the robbery, which we don't have here, you know, a couple miles from there. This is miles and miles and miles later, so you make an inference about time, and then you make a really big inference that the suspicious activity that we don't know who reported or exactly what the activity was, where one individual was driving the car, is the same activity that occurred 40 minutes later or thereabouts, where we have no car and two people. You make a big inference there, and then you eventually stop somebody, basically because they're driving a white Cadillac 60 miles later. There's lots of inferences there is my point. Why isn't that just a really good hunch on the part of this officer? Because I think you can't look at, as this Court has held, you can't look at it in a kind of divide and conquer analysis when you're dealing with reasonable suspicion. You have to look at the totality of the circumstances. And there were so many commonalities between the Flagstaff suspicious activity incident by a bank or near a bank and a bank robbery. But the car, which is all you really have, is the car, a white Cadillac. You have that an hour later. But you have to connect the two. Driving towards a city that might have a, that has a Wells Fargo bank. That was the other hunch, that maybe that's where he was headed, she was headed. Well, right, but we have the Bud Light hat. That's common to both. Ultimately, that's my other question. It has to be particularized suspicion. What was particularized here? The really, what you really have is a description of two individuals that robbed this bank that weren't driving a vehicle, they were running, and they were wearing particular clothing that ultimately has nothing to do with the stop an hour later. It's about the white Cadillac on a highway, an interstate highway in Arizona. Your Honor, but the white Cadillac, you need to connect. You have to take, excuse me, the collective facts of both, the totality of circumstances of both instances. And getting back to the time and distance problem, this Court has held that even if a fact leads to the possibility of innocent conduct, this Court has held that for reasonable suspicion to exist, an officer need not rule out the possibility of innocent conduct. He or she simply must possess a minimal level of objective justification for making the fact. And that's what Trooper Phillips did. He didn't look at the Winslow, I'm sorry, the Flagstaff suspicious activity in isolation. He didn't look at the Flagstaff bank robbery in isolation. He took the collective, his own collective knowledge of all the facts. And when he did stop that car, he had a number of reasons. Well, let's talk about stopping the car. I mean, there's one more problem we haven't talked about yet. Was that there was a female driving it, right? That's correct. And there's no evidence at all in Winslow of a female running. And we've got also kind of a troubling fact that he kind of changed his view, whether he thought he saw a female or a male driver, kind of for convenience purposes. I don't know where that comes from or how much weight to give it, but it puts a little bit of a bad taste in this whole thing. Well, regarding the fact that it was a female, was there any evidence of any female involved running in any way? No, Your Honor. So isn't that a problem for you? No, Your Honor, because I believe it was a reasonable mistake of fact, given that there's a tinted window. When somebody. No, I mean, in Winslow, there was no I mean, there were no tinted windows in Winslow. They were seeing people out running in the street. And and it was nobody said that there was a woman running in Winslow. No, it was a male. And so when he came even to the car, he said that I thought it was originally he correctly. I mean, originally he said it was a man because he thought that would fit the story. But then changed his mind when he saw a woman exiting the car. So does that. How does that play into it? Other than that, this guy may be not very punctilious about about facts. No, Your Honor. If you're referring to what he put in his report, what Trooper Phillips put in his report, he explained quite clearly at the evidentiary hearing that when he was writing out his report, he put the fact that the driver was female based on what actually what the driver actually was, the gender of the driver, not what he actually thought. In fact, the district court noted that in its opinion. And as far as. He explained it that way later. The report itself reads as though when he drove up along the side of the car, he thought he saw a woman through the black tinted glass. But he explained later that he was reporting what he eventually found. Yes, Your Honor. And the district court did seem to accept that. But I guess my question is, what does it matter? I mean, how is that particularized that through dark tinted glass, he thought maybe as he was driving 75 miles an hour alongside a car, he thought he might have seen the outlines of a male Native American face? Well, it was. What is that? How is that particularized? Well, it's a male Native American. With no hat. It's a male Native American face. And what about this person's face did he testify was made him think this was a Native American man? I think he said the facial features I think was his testimony. But what was he referring to through dark tinted glass? He saw what he reasonably believed, a Native American male wearing glasses. And if Your Honors would look at the picture, it's found in Volume 1, Document 25. It's not unreasonable, looking at the picture, that one would think that through the tinted windows it's a male. What about that, through dark tinted windows, what about that picture would identify it as a Native American male? That would be up to Trooper Phillips' perception, Your Honor. He didn't testify about that is my point. He didn't explain what he saw. No, Your Honor. He didn't. Again, it's not very particularized here. What if there had been three white Cadillacs within three miles of each other on that interstate? Is your position that Trooper had reasonable suspicion to stop each of them? I would think that in that situation, depending on, well, within the time and distance parameters, if he saw one of them with what he reasonably believed to be a Native American male with glasses, he could have stopped that one. But he didn't. He saw that rare, unique Cadillac. And, I mean, the basis for the stop was the fact that it was a white Cadillac, as described. It was rare and unique. And this Court has held a number of times that the uniqueness of a car at a certain place or location can be taken into consideration in the totality of circumstances. Is there any case where we've described that and it was 60 miles away from the actual event and wasn't described as being at the actual event? They were described as running from that event, the robbery. Is there anything close to this in terms of the connection that's being made here? With respect to the uniqueness? The idea that this is a getaway vehicle, so, and it's a unique getaway vehicle, a Cadillac. Well, not a Cadillac, but this Court has held that traffic patterns, including the uniqueness of a vehicle or its rarity at a particular location. But I'm saying that this is a location, an interstate highway is the location in Arizona. Yes. And it's a Cadillac being driven on an interstate highway in Arizona. Yes. And it's an hour away from the bank robbery where no one saw a white Cadillac. Correct. About 41 minutes. For 41 minutes, yeah. Rare and unique are interesting phrases. I mean, you might do that to a car that has got a big Bud Light sign on the top of it or flames written on the side or, you know, or something really unusual. But it's pretty hard to say, you know, that a white Cadillac is rare and unique. I mean, he did say we don't see them much down here. But it isn't as singularly descriptive as if somebody had said they had a big skull and crossbones painted on the trunk or something like that. That's correct, Your Honor. And I wish it were a Bud Light logo to go along with the Bud Light cap. Why do you not pursue the 78 miles an hour? Was that radar? It was unclear from the record. Did anybody ask the trooper, was that radar? No, no. And the trooper did say, and it's on page 19 of the transcript, he believed it was going, and this is a quote, approximately 78 miles an hour, but there's no indication whether that was a visual or by radar. And he was, and remember, he was, if I had to guess, I think because he was going in the opposite direction, and this thing was unexpected, and he was going in the opposite direction towards the town of Holbrook because he assumed his testimony was there's another bank in Holbrook. They've just made their way from Winslow, a bank in Winslow, I'm sorry, Your Honor, a bank in Flagstaff, a bank in Winslow. There's the town of Holbrook with a bank. So he's going in the opposite direction. So I would think it was an approximate. Is that when he, I guess I thought he had pulled up alongside him when he said he could see through the black clouds. He was on the other side of the interstate? Yes, Your Honor. He was on the other side of the interstate going towards Holbrook to intercept a potential bank robbery. He sees the white Cadillac coming eastbound. He makes a U-turn, follows it for, he said it took him about two minutes, I think, to catch up with it, and that's when he pulled alongside the Cadillac. And that's when he thought he saw a Native American man driving. With a black Cadillac. So it wasn't while he was going in the opposite direction. No, Your Honor. No, no. It was while he was traveling in the same direction. Alongside. Right by the car. Okay. Thank you. Thank you. And ordinarily Mr. Jones would be out of luck on the rebuttal bet because you went over, we'll give him two and a half minutes, please. Okay. I appreciate the rebuttal time, Your Honor. The counsel for the United States in his briefing as well as in argument today said that they relayed descriptions of the bank robbery suspects. And once again I want to clarify that nowhere in the record does it say that there were descriptions of the bank robbery suspects broadcast. The broadcast descriptions were of these people engaged in suspicious behavior near and around banks in an alley near a bank or somewhere near a bank in Flagstaff. We don't even have details on that. But I just want to clarify to the Court what we're working with is people described doing suspicious behavior not directly linked to the bank but near the bank. And I would argue that that's just not enough for reasonable suspicion of criminal behavior to Although the running from a, in the vicinity of a bank after the bank robbery occurred might be, would probably be enough to stop, at least to stop those running. But no car was identified in that. That's correct. That's correct. If they were seen running from a bank right after a bank robbery, that would probably be enough suspicion. Is even that in the record? I mean they were said to be running, but were they running away from the bank? Was that clarified? It's my understanding that they were seen running in an alley near the bank. Maybe running towards the bank instead of away from the bank? Do we know? It's just not clear. I don't know that they were running toward the bank. I don't know. But there's no evidence one way or the other whether they were running away or toward or sideways to it or anything. Correct. I want to make those clarification points. Any other questions from the Court? Then I will submit. Thank you. Thank you for your arguments. The case is submitted.